IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | No. 3:16-CR-60-M-5 |
| | § | |
| JEFFREY EUGENE FULLER, | § | |
| Defendant. | § | |

## ORDER

This matter is before the Court on an "Emergency Motion for Modification of Sentence Seeking Compassionate Release to Home Confinement Due to COVID-19" (doc. 1054), which was filed by counsel for Jeffrey Eugene Fuller ("Defendant") on April 16, 2020. At the direction of the Court, the Government provided an expedited response to the motion. (*See* docs. 1056, 1062.) Defendant then filed a reply. (*See* docs. 1064, 1065, 1066.) For the reasons set forth below, Defendant's motion will be **denied**.

## I. BACKGROUND

On April 23, 2019, Defendant pleaded guilty to count one of the second superseding indictment, which was filed on January 9, 2018. (*See* docs. 475, 476, 494.) Count one of the second superseding indictment charged him with conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349 (18 U.S.C. § 1347). (*See* doc. 289.) At his sentencing hearing, held on November 22, 2019, he was sentenced to 60 months' imprisonment and ordered to pay restitution in the amount of $40,738,791.93. (*See* doc. 901 at 2, 6.) Defendant did not file a direct appeal to the Fifth Circuit Court of Appeals.

## II. DISCUSSION

Defendant's motion is filed pursuant to 18 U.S.C. § 3582(c)(1)(A), the CARES Act, the Eighth Amendment, and the Fourteenth Amendment. (*See* doc. 1054 at 1; doc. 1066 at 2.) He

requests a modification to his sentence and an order for his immediate release to home confinement, with the remainder of the term of his sentence to be replaced by an equal period of home confinement, in addition to any further modifications or conditions the Court deems appropriate. (*See id.*) He further requests that he be allowed to serve the balance of any resulting home confinement at the home of his sister-in-law in Dallas, Texas, and that he be immediately released to quarantine for 14 days there and then shelter in place for the remainder of his sentence. (*See id.*)

**A. 18 U.S.C. § 3582**

On December 21, 2018, Congress passed the Formerly Incarcerated Reenter Society Transformed Safely Transitioning Every Person Act. *See* FIRST STEP ACT OF 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018) ("First Step Act"). The First Step Act amended 18 U.S.C. § 3582 to permit courts to modify sentences of imprisonment upon motion from a defendant who has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *United States v. Cantu-Rivera*, No. H-89-204, 2019 WL 2578272, at *1 (S.D. Tex. June 24, 2019) (citing 18 U.S.C. § 3582(c)(1)(A)). A court can modify a defendant's sentence if it finds "extraordinary and compelling reasons warrant such a reduction" and that such a reduction is consistent with the Sentencing Commission's policy statements. *Id.* (quoting § 3582(c)(1)(A)(i)).

As is applicable here, pursuant to 18 U.S.C. § 3582, the court can modify a term of imprisonment once imposed if it finds that:

    (i) extraordinary and compelling reasons warrant such a reduction; or

    (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses

2

for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).  Section 3582(c)(1)(A)(i) does not specifically define "extraordinary and compelling reasons."  However, the United States Sentencing Guidelines provide that "extraordinary and compelling reasons exist" when any of the circumstances set forth below exist:

(A) Medical Condition of the Defendant.--

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is--

(I) suffering from a serious physical or medical condition,
(II) suffering from a serious functional or cognitive impairment, or
(III) experiencing deteriorating physical or mental health because of the aging process,
that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.—

The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.--

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

> (D) Other Reasons.--As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13, App. Note 1.

In this case, Defendant asserts that (1) he is 55 years old;[1] (2) he suffers from hypertension and takes a prescription medication, Lisinopril, for the condition; (3) he has recurrent bronchitis; (4) his age and health conditions place him at a higher risk for severe disease or death from COVID-19; (5) he is incarcerated at FCI Seagoville, and COVID-19 has made it inside the prison walls; and (6) his current release date is January 29, 2021. (*See* doc. 1054 at 1; doc. 1055 at 7, 10.)

Defendant contends that he has exhausted the administrative remedies available to him. (*See* doc. 1055 at 15-18.) The Government counters that he has failed to exhaust under the First Step Act. (*See* doc. 1062 at 5.) Even if Defendant had properly exhausted the administrative remedies available to him, he has failed to demonstrate entitlement to relief under § 3582(c)(1)(A). He is not at least 70 years of age, and he has not served at least 30 years in prison on the offense for which he is currently imprisoned. *See* 18 U.S.C. § 3582(c)(1)(A)(ii). In addition, he has not demonstrated that "extraordinary and compelling reasons warrant such a reduction." *See id.* § 3582(c)(1)(A)(i). With respect to age as an "extraordinary and compelling reason[ ]," a defendant must be at least 65 years old, and here Defendant is only 55 years old. *See* U.S.S.G. § 1B1.13, App. Note 1. As to medical conditions constituting "extraordinary and compelling reasons," it must be a terminal illness or a serious medical condition from which the defendant is not expected to recover. *Id.* Here, Defendant asserts that he suffers with hypertension and recurrent bronchitis.

---

[1] Defendant's filings reflect some confusion over whether he is 55 or 56 years old. (*See* doc. 1054 at 1; doc. 1055 at 8, 10; doc. 1055-1 at 2.) His Presentence Report provides that he was born on December 31, 1964. (*See* doc. 622-1 at 3.) Therefore, it appears that he is 55 years old.

(*See* doc. 1054 at 1.)  He does not suggest that either condition is terminal.  Nor can he plausibly argue that either condition is a serious medical condition from which he is not expected to recover.

Defendant argues that the COVID-19 pandemic is an "extraordinary and compelling" justification for his release to early home confinement.  (*See* doc. 1055 at 18-21.)  Specifically, he contends that his age and health conditions subject him to a greater risk of severe disease or death.  (*See id.* at 18.)  The Court is not persuaded.  Although Defendant has hypertension and recurrent bronchitis, these two conditions have not been specifically identified by the Centers for Disease Control ("CDC") as placing an individual at a higher risk for contracting a more severe case of COVID-19 than the rest of the population. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited Apr. 28, 2020).  As for his age, the CDC has stated that those individuals 65 years old and older are at greater risk.  *See id.*  As noted, Defendant is only 55 years old.  (*See* doc. 622-1 at 3.)  Moreover, he has been designated by the Bureau of Prisons as Care Level 1, which means that he is among the healthiest of the inmates in the Bureau of Prisons.[2]  (*See* doc. 1062 at 2.)  Finally, Defendant argues that reliance on the Bureau of Prison's current plans to mitigate the spread of COVID-19 is unwarranted.  (*See* doc. 1055 at 21.)  This argument is unpersuasive here because to this Court's knowledge, there have been <u>no</u> positive COVID-19 cases at the Federal Camp Prison, where Defendant resides, and there are <u>no</u>

---

[2] Defendant appears to object to the Government's characterization of him as a "healthier" inmate.  (See doc. 1066 at 5-6.)  He argues that he is at specific risk due to COVID-19, and an inmate's care level is unrelated to their susceptibility to COVID-19.  (*See id.* at 5.)  There are four levels of care in the Bureau of Prisons' medical care level classification system. https://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf (last visited Apr. 29, 2020).  Defendant does not dispute that he is a Care Level 1 inmate.  (*See* doc. 1066 at 5-6.)  Care Level 1 inmates "are less than 70 years of age and <u>are generally healthy</u>." *Id.* (emphasis added).  Additionally, "[t]hey may have limited medical needs that can be easily managed by clinician evaluations every 6-12 months." *Id.*  Examples of Care Level 1 conditions are "[m]ild asthma, diet-controlled diabetes, stable HIV patients not requiring medications, well-controlled hyperlipidemia or hypertension, etc." *Id.*

staff COVID-19 cases at any of the Seagoville facilities.[3] (*See id.* at 1-2.) *See also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering [the Bureau of Prison]'s statutory role, and its extensive and professional efforts to curtail the virus's spread.").

The instant case is factually distinguishable from *United States v. Lee*, No. 3:07-CR-289-M-2, Crim. Doc. 1950 (N.D. Tex. Apr. 23, 2020) (Lynn, C.J.). In *Lee*, this Court found the defendant presented "extraordinary and compelling reasons" under § 3582(c)(1)(A)(i) that warranted a reduction in his sentence, and that such release was consistent with applicable policy considerations. *Lee*, No. 3:07-CR-289-M-2, Crim. Doc. 1950 at 1, 8. This conclusion was based upon the following considerations: (1) the defendant's older age (54 years old); (2) the existence of preexisting medical conditions (asthma, bronchitis, and hypertension); (3) a recent hospitalization for breathing complications; and (4) the rapid spread of COVID-19 at FCI Oakdale, where the defendant was incarcerated. *Id.* at 8. Here, Defendant is 55 years old and approximately the same age as the defendant in *Lee*. (*See* doc. 622-1 at 3) (noting that he was born on December 31, 1964). However, unlike the defendant in *Lee*, he does not allege that he suffers with a serious preexisting medical condition that has caused a recent hospitalization for breathing complications. (*See* docs. 1054, 1055.) Moreover, unlike the rapid spread of COVID-19 at FCI Oakdale, where the *Lee* defendant was incarcerated, Defendant in this case is incarcerated at the Federal Camp Prison at FCI Seagoville in Seagoville, Texas.[4] *See* https://www.bop.gov/inmateloc/ (last visited

---

[3] The Government explains that one COVID-19 positive inmate arrived at FDC Seagoville, the jail facility that is separate from the satellite camp, on April 3, 2020 and was immediately placed in isolation and never placed in the general population. (*See* doc. 1062-1 at 1-2.)

[4]

May 4, 2020). FCI Seagoville has only <u>one</u> confirmed inmate and <u>no</u> staff with COVID-19. *See* https://bop.gov/coronavirus/ (last visited May 4, 2020).

For all these reasons, Defendant is not entitled to relief under § 3582.

**B. CARES Act**

The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, was signed into law on March 27, 2020. Prior to the enactment of the CARES Act, the Bureau of Prisons was authorized to "place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." 18 U.S.C. § 3624(c)(2). However, pursuant to the CARES Act:

> During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau, the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.

CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2).

The Attorney General issued relevant memoranda on March 26, 2020 and April 3, 2020. https://www.justice.gov/coronavirus/DOJresponse (last visited Apr. 23, 2020). The April 3, 2020 memorandum provides that "emergency conditions are materially affecting the functioning of the Bureau of Prisons" and "expand[ing] the cohort of inmates who can be considered for home release." *Id.* The Attorney General directed the Bureau of Prisons Director to review all inmates with COVID-19 risk factors, beginning with inmates incarcerated at FCI Oakdale, FCI Danbury, FCI Elkton, and similarly situated facilities where COVID-19 is materially affecting operations. *Id.* For all at-risk inmates at such facilities who are deemed suitable for home confinement, they shall be immediately processed and transferred for a 14-day quarantine period. *Id.*

In this case, Defendant is not entitled to relief under the CARES Act because both it and the Attorney General's memoranda merely "instruct and expand the authority of the Director of the [Bureau of Prisons], not the courts, to release 'the most vu[l]nerable inmates at the most affected facilities.'" *See United States v. Stiger*, No. 3:12-CR-054-L-2, Crim. Doc. 1129 at 3-4 (N.D. Tex. Apr. 13, 2020) (Lindsay, J.) (denying a motion for recommendation that the defendant be transferred from Bureau of Prisons custody to home confinement to serve her sentence due to COVID-19 and noting that the Bureau of Prisons is in the best position to assess: (1) whether the defendant qualifies as one of the "most vulnerable inmates" based on current health, and (2) whether the facility where the defendant is confined is one of the "most affected facilities"). Accordingly, Defendant is not entitled to relief under the CARES Act.

### III.  CONCLUSION

Considering the foregoing, Defendant's "Emergency Motion for Modification of Sentence Seeking Compassionate Release to Home Confinement Due to COVID-19" (doc. 1054) is **DENIED**.

**SO ORDERED** this 6th day of May, 2020.

_____
BARBARA M. G. LYNN
CHIEF JUDGE